# EXHIBIT "A"

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 44642835
Date: Jun 5 2012 5:50PM
Mark Harper, Clerk

## IN THE STATE COURT OF FULTON COUNTY

## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| MARIE RAWLS, Individually and MARIE RAWLS, As Administrator of the Estate of BESSIE WHEAT, deceased, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION |
| | ) | FILE NO. 12 EVO15144 H |
| GGNSC ATLANTA, LLC, GGNSC ADMINISTRATIVE SERVICES, LLC, GGNSC CLINICAL SERVICES, LLC, GOLDEN GATE NATIONAL SENIOR CARE, LLC, GGNSC HOLDINGS, LLC and GOLDEN GATE ANCILLARY, LLC, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COME NOW, Marie Rawls, Individually, and Marie Rawls, As Administrator of the

Estate of Bessie Wheat, Plaintiffs in the above-styled action, and hereby file this Complaint for

damages and show the Court as follows:

## PARTIES AND JURISDICTION

1.

Bessie Wheat was a patient of Golden Living Center-Northside in 2008 and 2009.

2.

This lawsuit is being brought under the renewal statute, codified at O. C. G. A. § 9-2-61.

It is a renewal of a previously filed action, styled *Marie Rawls, Individually and as Personal*

*Representative of the Estate of Bessie Elizabeth Wheat, Deceased, Plaintiff, v. Golden Gate*

*National Senior Care, LLC, GGNSC Holdings, LLC, GGNSC Clinical Services, LLC, GGNSC*

*Administrative Services, LLC, Golden Gate Ancillary, LLC and GGNSC Atlanta, LLC d/b/a Golden Living Center, Northside, Defendants*; Superior Court of Fulton County; Civil Action File No. 2011CV205068, which action was dismissed without prejudice on December 12, 2011. All costs associated with that action have been paid as evidenced by the Civil Case Menu of the Clerk, which is attached hereto as Exhibit "A".

3.

Defendant GGNSC Atlanta, LLC owns, operates and manages Golden Living Center-Northside, a long term care facility located at 5470 Meridian Mark Road in Atlanta, Fulton County, Georgia, 30342.

4.

Defendant GGNSC Atlanta, LLC is a foreign limited liability corporation doing business as Golden Living Center-Northside, a long term care facility located at the above address.

5.

Defendant GGNSC Atlanta, LLC, may be served by serving its registered agent for service of process, CSC of Cobb County, Inc., at 136 North Fairground Street, N. E., Marietta, Cobb County, Georgia, 30060.

6.

Defendant GGNSC Atlanta, LLC has been properly served with the Summons and Complaint in this action.

7.

Venue as to Defendant GGNSC Atlanta, LLC is proper in this Court.

8.

Defendant GGNSC Atlanta, LLC is subject to the jurisdiction of this court.

2

9.

At all times material and relevant hereto, Defendant GGNSC Atlanta, LLC owned, maintained and/or operated Golden Living Center-Northside, a long term care facility located at the above address.

10.

In addition, at all times material hereto, Defendant GGNSC Atlanta, LLC had the right to control the time, manner and method of duties performed by the nurses, nurses' aides and other staff at Golden Living Center-Northside, and had the right to discharge the nurses, nurses' aides and other staff at the facility.

11.

Furthermore, at all times material hereto, the nurses, nurses' aides and other staff at Golden Living Center-Northisde were agents of Defendant GGNSC Atlanta, LLC, and were acting within the course and scope of their agency such that the negligence of these agents may be imputed to Defendant GGNSC Atlanta, LLC pursuant to the doctrine of *respondeat superior.*

12.

Defendant GGNSC Administrative Services, LLC owns, operates and manages Golden Living Center-Northside, a long term care facility located at 5470 Meridian Mark Road in Atlanta, Fulton County, Georgia, 30342.

13.

Defendant GGNSC Administrative Services, LLC is a foreign limited liability corporation doing business as Golden Living Center-Northside, a long term care facility located at the above address.

14.

Defendant GGNSC Administrative Services, LLC may be served by serving its registered agent for service of process, CSC of Cobb County, Inc. at 136 North Fairground Street, N.E., Marietta, Cobb County, Georgia, 30060

15.

Defendant GGNSC Administrative Services, LLC has been properly served with the Summons and Complaint in this action.

16.

Venue as to Defendant GGNSC Administrative Services, LLC is proper in this Court.

17.

Defendant GGNSC Administrative Services, LLC is subject to the jurisdiction of this court.

18.

At all times material and relevant hereto, Defendant GGNSC Administrative Services, LLC owned, maintained and/or operated Golden Living Center-Northisde, a long term care facility located at the above address.

19.

At all times material hereto, Defendant GGNSC Administrative Services, LLC had the right to control the time, manner and method of duties performed by the nurses, nurses' aides and other staff at Golden Living Center-Northside, and had the right to discharge the nurses, nurses' aides and other staff at the facility.

20.

Furthermore, at all times material hereto, the nurses, nurses' aides and other staff at Golden Living Center-Northside were agents of Defendant GGNSC Administrative Services, LLC and were acting within the course and scope of their agency such that the negligence of these agents may be imputed to Defendant GGNSC Administrative Services, LLC, pursuant to the doctrine of *respondeat superior*.

21.

Defendant GGNSC Clinical Services, LLC owns, operates and manages Golden Living Center-Northside, a long term care facility located at 5470 Meridian Mark Road in Atlanta, Fulton County, Georgia, 30342.

22.

Defendant GGNSC Clinical Services, LLC is a foreign limited liability corporation doing business as Golden Living Center-Northside, a long term care facility located at the above address.

23.

Defendant GGNSC Clinical Services, LLC may be served by serving its registered agent for service of process, CSC of Cobb County, Inc., at 136 North Fairground Street, N.E. Marietta, Cobb County, Georgia, 30060.

24.

Defendant GGNSC Clinical Services, LLC has been properly served with the Summons and Complaint in this action.

25.

Venue as to Defendant GGNSC Clinical Services, LLC is proper in this Court.

26.

Defendant GGNSC Clinical Services, LLC is subject to the jurisdiction of this court.

27.

At all times material and relevant hereto, Defendant GGNSC Clinical Services, LLC owned, maintained and/or operated Golden Living Center-Northside, a long term care facility located at the above address.

28.

In addition, at all times material hereto, Defendant GGNSC Clinical Services, LLC had the right to control the time, manner and method of duties performed by the nurses, nurses' aides and other staff at Golden Living Center-Northside, and had the right to discharge the nurses, nurses' aides and other staff at the facility.

29.

Furthermore, at all times material hereto, the nurses, nurses' aides and other staff at Golden Living Center-Northside were agents of Defendant GGNSC Clinical Services, LLC, and were acting within the course and scope of their agency such that the negligence of these agents may be imputed to Defendant GGNSC Clinical Services, LLC pursuant to the doctrine of *respondeat superior*.

30.

Defendant Golden Gate National Senior Care, LLC owns, operates and manages Golden Living Center-Northside, a long term care facility located at 5470 Meridian Mark Road in Atlanta, Fulton County, Georgia, 30342.

31.

Defendant Golden Gate National Senior Care, LLC is a foreign limited liability corporation doing business as Golden Living Center-Northside, a long term care facility located at the above address.

32.

Defendant Golden Gate National Senior Care, LLC may be served by serving its registered agent for service of process, CSC of Cobb County, Inc., at 136 North Fairground Street, N. E., Marietta, Cobb County, Georgia, 30060.

33.

Defendant Golden Gate National Senior Care, LLC has been properly served with the Summons and Complaint in this action.

34.

Venue as to Defendant Golden Gate National Senior Care, LLC is proper in this Court.

35.

Defendant Golden Gate National Senior Care, LLC is subject to the jurisdiction of this court.

36.

At all times material and relevant hereto, Defendant Golden Gate National Senior Care, LLC owned, maintained and/or operated Golden Living Center-Northside, a long term care facility located at the above address.

37.

In addition, at all times material hereto, Defendant Golden Gate National Senior Care, LLC had the right to control the time, manner and method of duties performed by the nurses,

nurses' aides and other staff at Golden Living Center-Northisde, and had the right to discharge the nurses, nurses' aides and other staff at the facility.

38.

Furthermore, at all times material hereto, the nurses, nurses' aides and other staff at Golden Living Center-Northside were agents of Defendant Golden Gate National Senior Care, LLC, and were acting within the course and scope of their agency such that the negligence of these agents may be imputed to Defendant Golden Gate National Senior Care, LLC pursuant to the doctrine of *respondeat superior*.

39.

Defendant GGNSC Holdings, LLC owns, operates and manages Golden Living Center-Northside, a long term care facility located at 5470 Meridian Mark Road in Atlanta, Fulton County, Georgia, 30342.

40.

Defendant GGNSC Holdings, LLC is a foreign limited liability corporation doing business as Golden Living Center-Northside, a long term care facility located at the above address.

41.

Defendant GGNSC Holdings, LLC may be served by serving its registered agent for service of process, CSC of Cobb County, Inc., at 136 North Fairground Street, Marietta, Cobb County, Georgia, 30060.

42.

Defendant GGNSC Holdings, LLC has been properly served with the Summons and Complaint in this action.

43.

Venue as to Defendant GGNSC Holdings, LLC is proper in this Court.

44.

Defendant GGNSC Holdings, LLC is subject to the jurisdiction of this court.

45.

At all times material and relevant hereto, Defendant GGNSC Holdings, LLC owned, maintained and/or operated Golden Living Center-Northside, a long term care facility located at the above address.

46.

At all times material hereto, Defendant GGNSC Holdings, LLC had the right to control the time, manner and method of duties performed by the nurses, nurses' aides and other staff at Golden Living Center-Northside, and had the right to discharge the nurses, nurses' aides and other staff at the facility.

47.

Furthermore, at all times material hereto, the nurses, nurses' aides and other staff at Golden Living Center-Northside were agents of Defendant GGNSC Holdings, LLC, and were acting within the course and scope of their agency such that the negligence of these agents may be imputed to Defendant GGNSC Holdings, LLC, pursuant to the doctrine of *respondeat superior*.

48.

Defendant Golden Gate Ancillary, LLC owns, operates and manages Golden Living Center-Northside, a long term care facility located at 5470 Meridian Mark Road in Atlanta, Fulton County, Georgia, 30342.

49.

Defendant Golden Gate Ancillary, LLC is a foreign limited liability corporation doing business as Golden Living Center-Northside, a long term care facility located at the above address.

50.

Defendant Golden Gate Ancillary, LLC may be served by serving its registered agent for service of process, CSC of Cobb County, Inc., at 136 North Fairground Street, Marietta, Cobb County, Georgia, 30060.

51.

Defendant Golden Gate Ancillary, LLC has been properly served with the Summons and Complaint in this action.

52.

Venue as to Defendant Golden Gate Ancillary, LLC, is proper in this Court.

53.

Defendant Defendant Golden Gate Ancillary, LLC is subject to the jurisdiction of this court.

54.

At all times material and relevant hereto, Defendant Golden Gate Ancillary, LLC owned, maintained and/or operated Golden Living Center-Northside, a long term care facility located at the above address.

55.

In addition, at all times material hereto, Defendant Golden Gate Ancillary, LLC had the right to control the time, manner and method of duties performed by the nurses, nurses' aides and

other staff at Golden Living Center-Northside, and had the right to discharge the nurses, nurses' aides and other staff at the facility.

56.

Furthermore, at all times material hereto, the nurses, nurses' aides and other staff at Golden Living Center-Northside were agents of Defendant Golden Gate Ancillary, LLC, and were acting within the course and scope of their agency such that the negligence of these agents may be imputed to Defendant Golden Gate Ancillary, LLC, pursuant to the doctrine of *respondeat superior*.

57.

Defendants were involved in a joint venture, enterprise and/or business in the ownership, management, maintenance and/or running of Golden Living Center-Northside while decedent was a resident there.

58.

As such, Defendants are all collectively liable to Plaintiffs for the violations set forth herein. Defendants are joint and several tortfeasors and are jointly and severally liable to Plaintiffs.

59.

The acts and omissions giving rise to Plaintiffs' claims occurred at Defendants' office/facility, which is located in Fulton County, Georgia.

60.

Plaintiffs have attached the Affidavit of Angela M. Ruckh, RN, in which Ms. Ruckh has set forth at least one negligent act and/or omission on the part of the Defendants. That Affidavit is attached hereto and marked Exhibit "B".

11

## FACTS

61.

Plaintiffs incorporate paragraphs 1 through 60 above as though set forth fully verbatim.

62.

Bessie Wheat was admitted to Golden Living Center-Northside (hereinafter "Golden Living") on December 29, 2008 at the age of eighty-nine (89). Upon admission, it was noted that she had gait instability and was ambulatory with a walker.

63.

Throughout her residency at Golden Living, resident assessments described in detail Mrs. Wheat's medical conditions that required the assistance of nursing and non-professional staff. The staff also prepared a Care Plan to address Mrs. Wheat's needs for medical and nursing care, as well as her activities of daily living.

64.

Throughout Mrs. Wheat's chart, the staff consistently noted that she had a number of medical and physical conditions that identified her to be at a risk for falls. These included diabetes, hypertension, degenerative joint disease, visual impairment, neuromuscular dysfunction, gait instability and an overall decline in her ability to perform her activities of daily living without staff assistance.

65.

Additionally, Mrs. Wheat was also on medications that may have increased her danger of falling.

66.

Mrs. Wheat was also noted to have cognitive impairment as well as long and short term memory problems, and to become confused and disoriented, leaving her to wander throughout the facility without her walker.

67.

Mrs. Wheat was noted in the chart to have sustained numerous falls in the past, and to have had a history of falls within the last thirty days prior to her admission at Golden Living. Accordingly, she was noted to need assistance in mobility and physical therapy to help strengthen her gait.

68.

On March 25, 2009, Mrs. Wheat fell while standing at a vending machine in the break room of the facility. As a result, she suffered pain in her right shoulder and the right side of her neck.

69.

After that fall, the facility failed to implement any new interventions.

70.

On April 24, 2009, Mrs. Wheat fell while she was in the shower. This fall resulted in pain to her head, neck and left shoulder, as well as bruising.

71.

After the April 24, 2009 fall, the care plan was not updated or revised and no interventions were noted.

72.

On July 6, 2009, it was noted that Mrs. Wheat had wandered in the facility most of the night and that she appeared to be confused, disoriented and hallucinating, and walking without her walker.

73.

On August 23, 2009, Mrs. Wheat was found lying on the floor next to her bed, complaining of neck pain and left hip pain. She was assisted back to bed and instructed not to get up. Approximately thirty minutes later she was found on the floor again.

74.

Despite these two simultaneous falls that had resulted in complaints of pain, the Golden Living staff made no effort to obtain prompt medical care for Mrs. Wheat, other than to request x-rays.

75.

The results of the x-ray were called in on the evening of August 23, 2009 indicating a left intertrochanteric fracture with no displacement and no dislocation.

76.

However, the above x-ray results were not relayed to the physician until the following day, at which point Mrs. Wheat was taken to the hospital.

77.

As a result of her fall and the injuries that she sustained, Bessie Wheat died in the hospital on August 29, 2009.

## COUNT I

## PROFESSIONAL NEGLIGENCE

78.

Plaintiffs incorporate paragraphs 1through 77 above as those set forth fully verbatim.

79.

The nurses employed by Golden Living owed a duty to Bessie Wheat to comply with the standard of care applicable to nurses generally under similar conditions and like surrounding circumstances as those presented by Bessie Wheat.   In particular, the nurses employed by Defendants violated the standard of care in the following ways:

(a)     Failing to prepare and execute an appropriate fall risk assessment upon admission;

(b)     Failing to implement appropriate and individualized interventions, including adequate supervision, as part of the plan of care to prevent Bessie Wheat from experiencing multiple falls resulting in injury;

(c)     Failing to adequately update the care plan once Bessie Wheat fell with appropriate individualized interventions;

(d)     Failing to modify and monitor effectiveness of interventions/approaches;

(e)     Failing to modify goals according to Bessie Wheat's specific needs;

(f)     Failing to evaluate and analyze hazards and risks preventing Mrs. Wheat from sustaining injuries; and

(g)     Failing to follow physicians' orders.

80.

As a direct and proximate result of the above violations of the standard of care committed by Defendants, by and through their employees, Bessie Wheat suffered excruciating physical and

15

mental pain and suffering prior to her death, as well as medical expenses, funeral expenses and burial expenses.

81.

Accordingly, Defendants are liable to Plaintiff Marie Rawls, in her capacity as the Administrator of the Estate of Bessie Wheat, for the excruciating physical and mental pain and suffering prior to her death, as well as medical expenses, funeral expenses and burial expenses.

82.

In addition, Defendants are liable to Plaintiff Marie Rawls for the full value of the life of the decedent.

83.

In support of this contention, Plaintiffs attach herewith the Affidavit of Angela M. Ruckh, R. N., in compliance with O. C. G. A. § 9-11-9.1, said Affidavit which is marked Exhibit "B".

## COUNT II

### VIOLATIONS OF THE GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CARE FACILITIES

84.

Plaintiffs incorporate herein paragraphs 1 through 83 above as though set forth fully verbatim.

85.

Defendants, through their agents, employees, servants, representatives and successors in interest, have violated Mrs. Wheat's rights enumerated under O.C.G.A. §§ 31-8-109 and the Rules of Georgia Department of Human Resources, Chapter 290-5-8-.01 through 290-5-8-.24.

86.

Plaintiffs bring this action pursuant to the "Bill of Rights for Residents of Long Term Care Facilities" (O.C.G.A. § 31-8-100, *et seq.*).

87.

The Official Code of Georgia § 31-8-108 provides that each resident shall receive care, treatment, and services, which are adequate and appropriate. Furthermore, it requires that the care, treatment, and services be provided with reasonable care and skill, in compliance with applicable laws and regulations, and with respect for the resident's personal dignity and privacy.

88.

Defendants failed to comply with these requirements and provisions of Official Code of Georgia § 31-8-108. Said violations on the part of Defendants (by and through their employees and agents) proximately caused injuries to Bessie Wheat, including pain and suffering.

89.

Pursuant to the Official Code of Georgia § 31-8-136, Plaintiffs are entitled to bring an action as a result of Defendants' violations of the "Bill of Rights for Residents of Long Term Care Facilities."

90.

As a proximate result of Defendants' violations of the "Bill of Rights for Residents of Long Term Care Facilities," Bessie Wheat suffered serious and debilitating injuries.

91.

As a proximate result of the violations of the "Bill of Rights for Residents of Long Term Care Facilities" on the part of Defendants, Bessie Wheat suffered pain and suffering and incurred medical expenses.

92.

Plaintiff Marie Rawls, as the Administrator for the Estate of Bessie Wheat, is entitled to recover damages for the pain and suffering and medical expenses incurred as a result of Defendants' violations of the above.

93.

Accordingly, Defendants are liable to Plaintiff Marie Rawls, in her capacity as the Administrator of the Estate of Bessie Wheat, for the excruciating physical and mental pain and suffering prior to her death, as well as medical expense, funeral expenses and burial expenses.

94.

In addition, Defendants are liable to Marie Rawls for the full value of the life of the decedent.

## COUNT III

## NEGLIGENCE PER SE OF GOLDEN LIVING FOR VIOLATIONS OF STATE AND FEDERAL REGULATIONS

95.

Plaintiffs incorporate paragraphs 1 through 94 as if fully set our herein verbatim.

96.

The nursing home facility known as Golden Living Center-Northside participates in the Medicare and Medicaid programs.   Accordingly, Defendants are subject to the rules and regulations concerning nursing homes participating in the Medicare and Medicaid programs adopted pursuant to the Omnibus Budget Reconciliation Act of 1987 (the "Act").

97.

The Act and accompanying regulations were enacted to protect the rights of nursing home residents in those homes that receive Medicare and Medicaid funding, and Bessie Wheat was a member of the class the Act and accompanying regulations were intended to protect. Accordingly, Defendants were guilty of negligence per se in their violation of 42 CFR § 483.10, 42 CFR § 483.13(c), 42 CFR § 483.15, 42 CFR § 483.20, 42 CFR § 483.25, 42 CFR § 483.30, 42 CFR §483.40 and 42 CFR § 483.75.

98.

The administrator, nurses, and other employees of Golden Living Center-Northside violated various provisions of the Code of Federal Regulations, and said violations constitute negligence per se. These violations include, but are not limited to, the following:

(a)     42 CFR § 483.10 and 15(a) which provide that the resident has a right to live a dignified existence;

(b)     42 CFR § 483.13(c) which requires that the facility implement protocols to protect the resident from neglect;

(c)     42 CFR § 483.15 which requires that the facility promote care for residents in a manner and in an environment that maintains or enhances each resident's dignity and respect in full recognition of his or her individuality;

(d)     42 CFR § 483.20 which requires a comprehensive assessment be done promptly after a significant chance in the resident's physical or mental condition and that a comprehensive care plan be done accordingly;

(e)     42 CFR § 483.25 which requires that each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest

practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

(f)    42 CFR § 483.25(a) which requires that a resident's abilities and activities of daily living not be diminished unless the circumstances of an individual's clinical condition demonstrate that diminution was unavoidable;

(g)    42 CFR § 483.25(h)(2) which requires the facility provide adequate supervision of residents to prevent accidents;

(h)    42 CFR § 483.30 which requires that the facility have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident as determined by the resident's assessments and individual care plans;

(i)    42 CFR § 483.40(d) which requires the facility to provide or make available emergency medical care of the residents at any and all times;

(j)    42 CFR § 483.75 which requires that the facility be administered in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well being of each resident;

(k)    42 CFR § 483.75 which requires properly trained, qualified and competent staff; and

(l)    42 CFR § 483.75(b) which requires the facility to operate and provide services in compliance with law and acceptable professional standards and principles that apply to professionals providing said services.

99.

The nurses and other employees employed by and working at Golden Living Center-Northside violated various Rules and Regulations of the Department of Human Resources and Public Health. Said violations constitute negligence *per se*. These violations include, but are not limited to, the following:

(a)     Section 290-5-8-.04 which requires that nursing care and related services be carried out in accordance with the facility's patient care policies.

(b)     Section 290-5-8-.10 which requires that nursing care shall provide to each patient according to her needs and in accordance with her patient care plan.

(c)     Section 290-5-8-.11 which requires that the nursing home maintain a complete medical record on each patient.

100.

The negligence *per se* of Golden Living Center-Northside, as set forth above, proximately caused Bessie Wheat to suffer pain and suffering, medical, funeral and burial expenses.

101.

Accordingly, Marie Rawls, as Administrator of the Estate of Bessie Wheat, is entitled to recover damages for her mother's pain and suffering, medical, funeral and burial expenses.

## COUNT IV

## ORDINARY/SIMPLE NEGLIGENCE

102.

Plaintiffs restate and incorporate herein the allegations of paragraphs 1 through 101 as if set forth in full herein.

103.

Defendants had a duty to exercise ordinary and reasonable care in:

(a)     Providing adequate, sufficient and appropriately trained staff at Golden

Living Center-Northside;

(b)     Providing appropriate and necessary training of all staff at Golden Living

Center-Northside;

(c)     Providing sufficient numbers of nurses, CNAs and other staff at Golden

Living Center;

(d)     Keeping the premises of Golden Living Center-Northside safe for the residents,

including Bessie Wheat; and

(e)     Providing appropriate equipment and devices in order to keep Bessie Wheat

safe at Golden Living Center-Northside.

104.

Defendants failed to exercise ordinary and reasonable care in performing the functions set

forth in the previous paragraph.

105.

As a direct and proximate result of the failure to provide ordinary and reasonable care,

Bessie Wheat suffered excruciating physical and mental pain and suffering and medical

expenses.

106.

Accordingly, Defendants are liable to Plaintiff Marie Rawls in her capacity as the Administrator of the Estate of Bessie Wheat, for the excruciating physical and mental pain and suffering prior to her death, as well as medical expenses, funeral expenses and burial expenses.

107.

In addition, Defendants are liable to Plaintiff Marie Rawls for the full value of the life of the decedent.

## COUNT V

## FAILURE TO PROVIDE SUFFICIENT AND PROPER STAFFING AND NURSING

108.

Plaintiffs incorporate paragraphs 1 through 107 above as thought set forth herein fully verbatim.

109.

The Golden Living Center-Northside Defendants had a duty to exercise ordinary and reasonable care in providing sufficient and competent staffing at Gold Living Center-Northside.

110.

Golden Living Center-Northside was chronically understaffed, which put patients at the facility at risk and in danger.

111.

The Golden Living Center-Northside Defendants breached their duty to exercise ordinary and reasonable care in providing sufficient and competent staffing at Golden Living Center-Northside.

23

112.

The Golden Living Center-Northside Defendants failed to provide sufficient and competent staffing at Golden Living-Northside and caused the facility to be chronically understaffed.

113.

The Golden Living Center-Northside Defendants' acts and omissions caused injuries to Bessie Wheat, and ultimately her death.

114.

As a result of the Golden Living Center-Northside Defendants' understaffing at Golden Living Center-Northside, Plaintiff Marie Rawls is entitled to recover for the wrongful death of her mother, Bessie Wheat.

115.

As a further result of the Golden Living Center-Northside Defendants' failure to provide sufficient staff at Golden Living Center-Northside, Plaintiff Marie Rawls, as Administrator of the Estate of Bessie Wheat, is entitled to recover damages for the pain and suffering, medical expenses, funeral expenses and burial expenses incurred in connection with the injuries to and death of Bessie Wheat.

## COUNT VI

## PUNITIVE DAMAGES

116.

Plaintiffs restate and incorporate herein the allegations of paragraphs 1 through 115 above as if fully set forth herein verbatim.

117.

The acts and omissions of the Defendants demonstrate fraud, intentional misconduct, willful and wantonness misconduct, oppression, malice, and a conscious indifference to the consequences, including the safety and health of Bessie Wheat.

118.

The acts and omissions of the Defendants were accompanied by aggravating circumstances.

119.

Defendants are liable for punitive damages to Plaintiffs.

120.

Punitive damages should be awarded to Plaintiffs and against Defendants to punish Defendants and deter Defendants from repeated misconduct as described in this Complaint.

WHEREFORE, Plaintiffs pray for the following relief:

(a)     That process be issued as to the Defendants;

(b)     That Plaintiff Marie Rawls, as Administrator of the Estate of Bessie Wheat, recover a judgment against the Defendants, jointly and severally, in an amount to be shown by the evidence at the trial of this case, for the pain and suffering, medical expenses and funeral expenses of Bessie Wheat;

(c)     That Plaintiff Marie Rawls recover a judgment in excess of $10,000 against the Defendants, jointly and severally, in an amount to be shown by the evidence at the trial of this case, for the wrongful death of Bessie Wheat;

(d)     That Plaintiffs recover a judgment against Defendants for punitive damages in an amount sufficient to punish Defendants and deter the Defendants from similar conduct in the future;

(e)     That the Court and Jury grant such other and further relief as they deem appropriate and warranted by the evidence; and

(f)     That Plaintiffs be granted a trial by jury.

*PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY*

This __5__ day of June, 2012.

Respectfully submitted,

WATKINS, LOURIE, ROLL & CHANCE, PC

BY _____
JOSEPH W. WATKINS
Georgia Bar No. 740525
jww@wlr.net

BY _____
LANCE D. LOURIE
Georgia Bar No. 458520
ldl@wlr.net

BY _____
SUZANNE T. FINK
Georgia Bar No. 716244
sf@wlr.net

Tower Place 200, Suite 1050
3348 Peachtree Road, N.E.
Atlanta, Georgia  30326
(404) 760-7400

PERROTTA, CAHN & PRIETO, P.C.

BY *Michael A Prieto*
MICHAEL A. PRIETO
Georgia Bar No.  587236
map@perrottalaw.com

5 South Public Square
Cartersville, GA 30120
(770) 382-8900
www.perrottalaw.com                    ATTORNEYS FOR PLAINTIFFS

27

```
Screen Print from AbleTerm session(fulton)            02:12 PM  05/24/2012

                    -- Civil Case Menu --                    INACTIVE

Track No.: 730797                Modified : 12/28/11 02:17pm SPVCJOH
Case No. : 2011CV205068          Case Type: DAMAGE
Court    : SUPERIOR COURT        Status   : Disposed
Judge    : F (CHRISTOPHER S. BRASHER)  # Images : 13

MARIE RAWLS, INDIVIDUALLY AND AS       (P) MICHAEL PRIETO, et al
PERSONAL REPRESENTATIVE OF THE ESTATE OF
BESSIE ELIZABETH WHEAT, DECEASED vs.   (D) ** No Attorney of Record **
GOLDEN GATE NATIONAL SENIOR CARE, LLC,
File Date : 08/26/2011  (108 Days)     Disposition: DISMISSED WITHOUT PREJUDI
                                                    12/12/11


Case Cost   :      $261.50       Last Event : MICROFILMED FILE
Balance     :        $0.00                    12/16/11


     C Case         E  Events      H Hearings      D Disposition    M Motions
     A Appeals      FS Fees        F Forms         S Summary        + MORE

Enter Selection or 'RETURN' to Select Another Case:
```



STATE OF FLORIDA       )
                                  )

COUNTY OF CLAY        )

## AFFIDAVIT OF ANGELA M. RUCKH, R.N.

COMES NOW, ANGELA M. RUCKH, R.N., who after being duly sworn, deposes and states under oath:

1.

My name is Angela M. Ruckh. I am of legal age, and am competent to testify.

2.

The facts contained in this Affidavit are based upon my own personal knowledge.

3.

I am currently licensed as a registered nurse in the State of Florida and have been so since 2002, when I received my Associate in Science degree in nursing Prior to that I was a licensed practical nurse since 1992. I also hold an MDS certification. The MDS is part of a federally-mandated process for assessment of nursing home residents in the United States. I have served as a registered nurse and MDS coordinator in various long-term care facilities in the State of Florida, and I have served as a consultant to various facilities. At the time of the acts or omissions discussed herein, I was licensed by the appropriate regulatory agency to practice nursing in the State of Florida. A true and accurate copy of my curriculum vitae is attached hereto as Exhibit "A".



EXHIBIT
"B"

4.

I have actual professional knowledge and experience in the area of nursing, and in particular, in the area of fall prevention and overall general nursing care with respect to patients similar to Bessie Wheat, as a result of having been regularly engaged in the active practice of licensed practical nursing since 1992, and registered nursing since 2002 to the present. I have been engaged in the active practice of nursing for at least three of the last five years prior to the negligence committed by Golden Living Center-Northside as set forth below. I have been employed as a care plan nurse and MDS coordinator at All Saints Catholic Nursing Home and Rehabilitation Center in Jacksonville, Florida, since 2004. Furthermore, my practice of nursing education and consultation during this period has included the following aspects of care for patients with signs and symptoms similar to those of Bessie Wheat:

    (a)    Providing care to patients with signs and symptoms similar to those of Bessie Wheat;

    (b)    Evaluating known risk fall factors, creating fall prevention care plans and instituting fall prevention safety measures;

    (c)    Assessing patients with signs and symptoms similar to those of Bessie Wheat; and

    (d)    Developing care plans for patients with signs and symptoms similar to those of Bessie Wheat.

5.

I am familiar with the standard of care and skill exercised by nurses generally under similar conditions and like surrounding circumstances in 2009 as those presented by Bessie Wheat while a resident at Golden Living Center-Northside.

6.

2

I have reviewed the medical records for Bessie Wheat from December of 2008 through August of 2009 from Golden Living Center-Northside (hereinafter "Golden Living"), Piedmont Medical Care and Hospice Atlanta. My review of those records reveals the following:

(a)     Bessie Wheat was admitted to Golden Living on December 29, 2008 at the age of eighty-nine (89). It was noted upon admission that she had gait instability. It was also noted that she was ambulatory with a walker.

(b)     Throughout her residence at Golden Living, resident assessments described in detail Mrs. Wheat's medical conditions that required the assistance of nursing and non-professional staff. The staff also prepared a care plan to address Mrs. Wheat's needs for medical and nursing care, as well as to address her activities of daily living.

(c)     Throughout her chart, the staff consistently noted that Mrs. Wheat had a number of medical and physical conditions that identified her to be at risk for falling. These included diabetes, hypertension, degenerative joint disease, visual impairment, neuromuscular dysfunction, gait instability and an overall decline in her ability to perform her activities of daily living without staff assistance.

(d)     Mrs. Wheat was also on medications that may have increased her danger of falling.

(e)     Mrs. Wheat was also noted to have cognitive impairment as well as long and short term memory problems, and to become confused and disoriented, leading her to wander through the facility without her walker.

(f)     Mrs. Wheat was noted in the chart to have sustained numerous falls in the past, and to have had a history of falls within the last thirty (30) days prior to her admission.

3

(g)     Accordingly, Mrs. Wheat was noted to need assistance in mobility and physical therapy to help strengthen her gait.

(h)     On March 25, 2009, Mrs. Wheat fell while standing at a vending machine in the break room of the facility.  As a result, she suffered pain in her right shoulder and the right side of her neck.

(i)     After that fall, the facility failed to implement any new interventions.

(j)     On April 24, 2009, Mrs. Wheat fell while she was in the shower.  This fall resulted in pain to the head, neck and left shoulder, as well as bruising.

(k)     After the April 24, 2009 fall, the care plan was not updated or revised and no interventions were noted.

(l)     On July 6, 2009, it was noted that Mrs. Wheat had wandered in the facility most of the night and appeared to be confused, disoriented and hallucinating, and walking without her walker.

(m)     On August 23, 2009, Mrs. Wheat was found lying on the floor next to her bed, complaining of neck pain and left hip pain.  She was assisted back to bed and instructed not to get up.  Approximately thirty minutes later she was found on the floor again.

(n)     Despite these two simultaneous falls that had resulted in complaints of pain, the staff made no effort to obtain prompt medical care for Mrs. Wheat, other than to request x-rays.

(o)     The results of the x-ray were called in on the evening of August 23, 2009 indicating a left intertrochanteric fracture with no displacement and no dislocation.

(p)     However, the above x-ray results were not relayed to the physician until the following day, at which point Mrs. Wheat was taken to the hospital.

(q)     Bessie Wheat died in the hospital five (5) days later on August 29, 2009.

4

7.

In my professional opinion, the nurses working at and employed by Golden Living deviated from the standard of care and skill exercised by nurses generally and under similar conditions and like surrounding circumstances as those presented by Bessie Wheat.    In particular, they deviated from the applicable standard of care by:

     (a)     Failing to prepare and execute an appropriate fall risk assessment upon admission;

     (b)     Failing to implement appropriate and individualized interventions, including adequate supervision, as part of the plan of care to prevent Bessie Wheat from experiencing multiple falls resulting in injury;

     (c)     Failing to adequately update the care plan once Bessie Wheat fell with appropriate individualized interventions;

     (d)     Failing to modify and monitor effectiveness of interventions/approaches;

     (e)     Failing to modify goals according to Bessie Wheat's specific needs;

     (f)     Failing to evaluate and analyze hazards and risks preventing Mrs. Wheat from sustaining injuries; and

     (g)     Failing to follow physicians' orders.

8.

This Affidavit is being given by me in order to comply with the requirements of O.C.G.A. § 9-11-9.1. This Affidavit does not and is not intended to include all of my opinions that I have formed following my review of the above-referenced records.  In fact, I may have additional opinions which are not expressed herein.  I reserve the right to alter, supplement and/or amend my opinions after I have reviewed additional records, deposition testimony, and/or have received additional information.

5

*FURTHER AFFIANT SAYETH NOT.*

_____

ANGELA M. RUCKH, R.N., MDS-CT

SWORN TO AND SUBSCRIBED TO
before me this _12_ day of _May_, 2012.



NOTARY PUBLIC. STATE OF FLORIDA.
My Commission Expires: _____

DARLYNN KENNEDY
Commission # EE 167361
Expires February 7, 2016
Bonded Thru Troy Fain Insurance 800-385-7019

DARLYNN KENNEDY
Commission # EE 167361
Expires February 7, 2016
Bonded Thru Troy Fain Insurance 800-385-7019

6

# Angela M. Ruckh, RN, MDS Certified 2.0/3.0

*Curriculum Vitae*

2892 Majestic Oaks Lane
Green Cove Springs, FL 32043          aruckh@comcast.net          Cell: (904) 742-6068

## LEGAL NURSE CONSULTANT

### Registered Nurse / Case Management & Assessment / Chart Review

- **Nursing Home Registered Nurse** offering 24 years of hands-on clinical experience in positions of increasing responsibility within Long Term Care facilities. Possess unique blend of skills and experience: clinical, administrative, consulting and research.

- **Legal Nurse Consultant** competent in all aspects of medical record review with strengths in serving as a standards of care expert, conducting research, investigating the delivery of health care, and reviewing patient charts for causation and regulatory compliance.

- **MDS/Care Plan Nurse** experienced in all aspects of Nursing Home Care. Ability to conduct extensive chart reviews and develop a comprehensive plan of care based on findings. Exceptional report with Care Plan Team members, Residents, staff, families and physicians. Able to interpret medical records to residents and families in a clear way so that by understanding clearly they can make informed decisions about their care.

- **Attorney educator** able to articulate complex medical lingo into easy to understand terms. Can assist you to understand clearly what caused an injury, what type of care a resident received and how it relates to your legal case.

---

## LICENSES & CERTIFICATION

**Registered Nurse**, Florida State License #RN9194479

**Legal Nurse Consultant**, University of Central Florida

**MDS Certification 2.0 - 3.0**
The MDS is part of a federally mandated process for assessment of any nursing home resident in the nation. MDS coordinators ensure that patient charts are accurate, comply with medical standards and regulatory requirements.
*From this assessment Care Plans for the patient are generated

## EDUCATION

| | |
|---|---|
| **A.S., Nursing**, Excelsior College, Albany, NY | 2002 |
| **LPN**, St. Augustine Tech Center, St. Augustine, FL | 1992 |
| **CNA** St. Augustine Tech Center, St. Augustine, FL | 1988 |

*Continued...*



EXHIBIT
"A"

Angela M. Ruckh, RN, LNC, MDS Certified                                              C.V. / Page 2

## PROFESSIONAL AFFILIATIONS

American Association of Legal Nurse Consultants                                              2011

American Association of Nurse Assessment Coordinators                                        2011

## CAREER PROGRESSION

**RN, MDS 3.0 /Care Plan Clinical Consultant - various facilities**          January 2011- Present
Med Best Executive recruitment-Per Diem

Coordinate with Nursing Home/Rehabilitation center staff at various facilities to accomplish compliance with OBRA/ PPS State and Federal regulations. Perform assessments of Residents activities of daily living: Review medications, treatments, therapy provided, care provided etc. Assessments include resident response to care and identifying barriers to care. Develop Care Plans to identify needs and potential safety issues based on comprehensive assessments. Provide staff training for new MDS Coordinators. This position has required working very closely with corporate compliance officers, Administrator and Directors of Nursing to improve overall care of the residents within their facilities.

**All Saints Catholic Nursing Home & Rehabilitation Center**, Jacksonville, FL          2004 – Present
*MDS Coordinator / Care Plan Nurse*                                                   *PRN since 1/15/11*

Provide leadership and direction in conducting comprehensive patient assessments in compliance with state and federal regulatory requirements for MDS 2.0 / MDS 3.0. Develop and implement individualized care plans per state and federal regulations. Review, analyze, and evaluate all care provided to patients throughout facility, make recommendations and develop care plans for each Resident. Perform and submit MDS assessments to the State of Florida Agency for Health Care Administration. Investigate each resident's chart to identify problems, potential problems, and establish goals to improve care. Act as Care Plan Coordinator to review care plans with staff, residents, and families. Serve as member of the Quality Improvement Committee to review data collected from MDS assessments to improve overall quality of patient care.
- Assist with staff training and development.
- Contributed to facility's first-ever 2 delinquency-free surveys.
- Received no State or Federal Citations related to Care Plans/MDSs in seven years of State and Federal surveys

**Life Care Center at Wells Crossing**, Orange Park, FL                             1998 – 2004
120-bed nursing and rehabilitation center
*Floor RN / Charge Nurse*
Patient care on assigned shifts throughout facility. Provide Supervision of RNs, LPNs, and CNAs when assigned. Provided bedside nursing care, including full patient assessments, administering medications, documentation, wound care dressing changes, IV therapy, and monitoring patient vital signs and conditions.
- Won annual Award in 2001 corporate award

*Continued...*

Angela M. Ruckh, RN, LNC, MDS Certified                                          C.V. / Page 3

**Vencor Hospital North Florida**, Green Cove Springs, FL                        1993 – 1998
*Long-term acute care Hospital*
*Wound Care Specialist / Director / LPN Staff Nurse*

Provided care for acutely ill patients. Responsible for care of ventilator-dependent patients, tracheostomy care, IV therapy, critical care, and serving on code team. Wound Care Director to oversee the wound care of 30 to 40 patients daily. Organized and held in-services for staff on wound care. Vencor specializes in the care of catastrophic wounds therefore many of the patients admitted came to Vencor for wound care.

- A Pilot Facility for Wound Vac Therapy-As Wound Care Director worked closely with KCI , wound surgeons, patients and Hospital Administration to perform close monitoring of wounds , documentation on progress of wounds, pictures and measurements etc. Required being on call 24hrs a day 7 days a week to support facility staff and available to come to facility to change dressing due to soiling or loss of negative pressure. Today KCI-wound Vac therapy is a standard in wound care therapy for various types of wounds
- Trained in and provided hydrotherapy to necrotic wounds that required debridement
- Assisted Surgeons with bedside debridement of necrotic wounds
- Worked in conjunction with other team members to provide comprehensive wound care. Addressing all aspects of the patients care to promote optimal healing.
- Implemented various interventions for the at risk patients to prevent additional wounds. Focused on the entire patient addressing nutrition, hydration, specialty beds, supplements, dressings etc.

**Holly Point Manor**, Orange Park, Fl                                           1988 – 1998
*Nursing Home and Rehab center*                                                  part time 1993-1998
**LPN Floor Nurse**
1992-1998

Care of patients in long-term setting. Performing full range of nursing duties such as patient assessments, charting, medication administration, and wound care.

*Certified Nursing Assistant*

1988-1992
Provided care for nursing home residents, including bathing, grooming, and hygiene assistance.

Attorney References available on request